**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Vanessa St. Pierre,<br><br>    Plaintiff<br><br>v.<br><br>Advanced Call Center Technologies, LLC,<br><br>    Defendant | 2:15-cv-02415-JAD-NJK<br><br>**Order Granting Defendant's Motion to Dismiss and Compelling Arbitration**<br><br>[ECF Nos. 13, 35, 37, 39] |

Synchrony Bank issued plaintiff Vanessa St. Pierre a credit card. St. Pierre allegedly stopped making her payments, so Synchrony hired Advanced Call Center Technologies (ACCT) to endeavor to collect from her. St. Pierre alleges that in attempting to collect on her debt, ACCT harassed her in violation of the Fair Debt Collection Practices Act (FDCPA).

ACCT now seeks to compel St. Pierre to arbitration. Synchrony and St. Pierre's credit agreement says that all claims related to St. Pierre's account are subject to arbitration. But the agreement only refers to Synchrony or St. Pierre compelling arbitration, it makes no mention of ACCT. ACCT nevertheless contends that it should be permitted to stand in Synchrony's shoes, as its agent, and assert Synchrony's arbitration rights.

Utah law governs whether ACCT can invoke Synchrony's arbitration rights on the basis that ACCT is its agent—and while Utah's caselaw is unclear on this point—the weight of authority suggests that ACCT should be permitted to compel arbitration here. Where an agreement contemplates that a party's alleged wrongdoing would be subject to arbitration, it makes little sense to treat that party's agent any different. After all, companies typically act through employees and agents, and allowing plaintiffs to avoid arbitration by simply suing an agent instead of its principal would nullify much of the value derived from arbitration agreements. This is particularly true in light of the Federal Arbitration Act's mandate that agreements must be interpreted in favor of arbitration. It is also particularly true given that the party being compelled here, St. Pierre, agreed to

arbitrate the substance of her FDCPA claim in her agreement with Synchrony. ACCT may therefore compel St. Pierre to arbitration.[1] I grant the motion to compel, dismiss this case without prejudice to the arbitration of St. Pierre's claim, and deny all other pending motions without prejudice as moot.

## The Factual Record

St. Pierre and Synchrony entered into a credit agreement and Synchrony issued St. Pierre a J.C. Penney credit card. St. Pierre allegedly fell behind on her payments, and Synchrony placed her account with ACCT for collection. ACCT called St. Pierre to encourage her to pay her debt, and St. Pierre alleges that these calls violated the FDCPA. ACCT's motion to compel relies on the arbitration agreement's terms and ACCT's relationship with Synchrony.

### A.   The arbitration agreement

St. Pierre's credit agreement provides that any claim "related to" St. Pierre's "account" is subject to arbitration—not merely claims related to the terms of the agreement itself.[2] It further states that St. Pierre agrees to arbitrate claims against Synchrony's "affiliates" and "agents."[3] The agreement goes on to explain that Synchrony is empowered to use "all channels of communication" to contact St. Pierre, and that Synchrony could "request payment of the full amount due" and use "any other action" to collect what St. Pierre owes on her account.[4]

### B.   ACCT's relationship with Synchrony

The relationship between ACCT and Synchrony was governed by a Statement of Work. The Statement of Work provides that Synchrony would "place Accounts" with ACCT "for collection Services."[5] Synchrony paid ACCT by the hour.[6] Synchrony retained the right to recall

---

[1] I find this motion suitable for disposition without oral argument. Nev. L.R. 78-1.

[2] ECF No. 13-1 at 6.

[3] *Id.*

[4] *Id.*

[5] ECF No. 13-2.

[6] *Id.*

accounts from ACCT at any time.[7] ACCT was allowed to negotiate and settle accounts on behalf of Synchrony, but only within strict guidelines.[8] Otherwise, "[a]ll other settlements and settlement amounts and terms" were required to "receive prior written approval of [Synchrony]."[9]

ACCT agreed to "perform the [collection] Services in accordance with . . . written instructions provided . . . by [Synchrony]."[10] Synchrony issued written settlement guidelines that further defined the step-by-step process that ACCT's employees were required to walk through when negotiating settlements with customers.[11] Among other things, these guidelines specified different scripts to be followed in different scenarios, defined minimum percentage settlement values that varied depending on the stage of the debt and the type of credit card, established deadlines for offering settlements, and provided instructions for creating mandatory documentation in Synchrony's proprietary computer program.[12] Synchrony even created training materials for ACCT and required ACCT to comply with specific record-keeping practices.[13]

## Discussion

Generally, the right to compel arbitration "may not be invoked by one who is not a party to the agreement."[14] This is because the right to compel arbitration is a contractual right and only contractual parties can assert contractual rights.[15] But there are exceptions to this rule. If the governing state law would allow a non-party to enforce an arbitration provision, then that

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citation omitted).

[15] *Id.*

nonsignatory can compel arbitration.[16]  I must thus determine whether Utah's law—the state law that both parties agree applies here—allows ACCT to enforce the arbitration agreement, despite that it is not a party to that agreement.[17]  ACCT argues that under Utah law it should be permitted to stand in Synchrony's shoes and compel arbitration because it is Synchrony's agent.[18]

Utah caselaw suggests that an agent can enforce its principal's contractual right to compel arbitration when the agent is sued for *breaching* that contract.  But St. Pierre is suing ACCT for violating the FDCPA when it attempted to collect under the contract, she is not suing for breach of the contract itself.  And no Utah cases cited by the parties, nor any that I can find, shed light on whether an agent can compel arbitration when the claim against it is merely *related* to the contract.

The only time the Utah Supreme Court weighed in on this agency theory at all was in *Ellsworth v. American Arbitration Association*.[19]  But *Ellsworth* merely suggests that the agency theory for compelling arbitration can be used when an agent is sued for breaching a contract.[20]  And the cases that the *Ellsworth* court cites are similarly unhelpful.[21]  In short, nothing in *Ellsworth* or any other Utah case cited by the parties (or that I can find) reaches the issue of whether an agent can

---

[16] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

[17] *Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1229 (9th Cir. 2013) ("We therefore examine the contract law of California to determine whether Best Buy, as a nonsignatory, may seek arbitration . . . .").

[18] ACCT also raises an assignment theory, but I need not (and thus do not) address that because, as explain below, I find that ACCT may compel arbitration as Synchrony's agent.

[19] *Ellsworth v. Am. Arbitration Ass'n,* 148 P.3d 983, 990 (Utah 2006).

[20] *Id.*

[21] The alleged agent in *Ellsworth* was sued for breaching the contract that contained the arbitration clause—so the court never reached the situation here, where the agent is sued for breaching a federal statute, not the contract.  *Ellsworth* cites to *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, but this case was about estoppel, not agency.  *International Paper* cites, in turn, to *Interbras Cayman Co. v. Orient Victory Shipping Co.*  *Interbras* is the first case in this chain that addresses the agency theory, but the Second Circuit (like *Ellsworth*) addressed only the case where a nonsignatory is sued for a claim arising from the terms of a contract.  *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 6 (2d Cir. 1981).  *Interbras* is even further removed because it concerned an undisclosed principal attempting to enforce a contract made for its benefit.  *Id.*

avail itself of its principal's right to arbitration when the claim against it does not directly arise from the contract. I must thus turn to other jurisdictions.

    **A.    Agents can use their principal's arbitration powers when the claim against the agent is related to the agreement that contains the arbitration clause.**

The weight of authority across the nation indicates that an agent can avail itself of its principal's arbitration powers under a contract so long as the claim against the agent relates to that contract. The Ninth Circuit in *Letizia v. Prudential*, for example, held that agents of a securities company could avail themselves of their principal's arbitration agreement when they were sued for mishandling customers' securities accounts.[22] Despite that the agents were being sued for *statutory* violations, *not breaches* of the securities agreements—the Ninth Circuit held that it was enough that all "of the individual defendants' allegedly wrongful acts *related to* their handling of [the plaintiff's] securities account."[23]

Contrast this situation with the one in *Britton v. Co-op Banking Group*. The Ninth Circuit started from the same broad standard: whether the agent's alleged wrongdoing "*relate[s] to* or arise[s] out of the contract containing the arbitration clause."[24] But the court did not allow the agent to use his principal's arbitration powers because the claim was that the agent conducted fraud completely independent of the agreement containing the arbitration clause.[25]

Other courts have generally taken this same approach, finding that it is enough that an agent is sued for conduct relating to the agreement containing the arbitration clause, even if the claim does not directly arise from that agreement.[26] Indeed, one other U.S. District Court has specifically held

---

[22] *Letizia v. Prudential Bache Secs., Inc.,* 802 F.2d 1185 (9th Cir. 1986).

[23] *Id.* at 1188 (emphasis added); *see also Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("The *Letizia* court noted that brokers and [agents] were integral to, if not directly responsible for, the alleged statutory violations of the principal corporation.").

[24] *Britton v. Co-op Banking Grp.,* 4 F.3d 742, 744 (9th Cir. 1993) (emphasis added).

[25] *Id.*

[26] *See Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007) (framing the question as whether "the claims against the agents arise out of *or relate to* the contract

that Utah law would allow an agent sued for violating the FDCPA to enforce its principal's arbitration powers.[27]

These cases suggest a common-sense principle: where two parties to an agreement contemplate that a principal's alleged wrongdoing would be subject to arbitration, it makes little sense to treat that principal's agent any differently—regardless of whether the claim directly arises from the contract's terms. After all, entities can only act through employees or agents, "and an arbitration agreement would be of little value if it did not extend to [agents]."[28] And if a party can avoid arbitration by simply naming a nonsignatory agent as a defendant, the right to arbitrate would

---

containing the arbitration clause." (emphasis added)); *Lee v. Chica*, 983 F.2d 883 (8th Cir. 1993) (concluding that an agent was covered by the arbitration agreement because "[t]he arbitration clause provides that 'any controversy arising out of [the customer] agreement' will be settled by arbitration . . . [and] [a]ll of [the] allegations against [the agent] arise out of his actions . . . *in connection with* the management of her account." (emphasis added)); *Arnold v. Arnold Corp.,* 920 F.2d 1269 (6th Cir. 1990) (same); *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 11 (1st Cir. 2014) (noting that a number of our "circuits have addressed the issue, and all have held that an agent is entitled to the protection of her principal's arbitration clause when the claims against her are based on her conduct as an agent"); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 223–24 (3d Cir. 2007) ("[B]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.") (citation omitted); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 956 (N.D. Cal. 2012); *Stevens v. Phillips*, 852 So.2d 123, 129 (Ala. 2002) ("A party should not be able to avoid an arbitration agreement merely by suing an employee of a principal.") (citation omitted); *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex. App. 2001); *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 227 P.3d 796, 805 & n.7 (Or. Ct. App.2010); *B.A.P., L.L.P. v. Pearman*, 250 P.3d 332, 339–40 (Okla. Civ. App.2011); *Madden v. Ellspermann*, 813 S.W.2d 51, 53–54 (Mo. Ct. App.1991). But there are exceptions. *See, e.g., Westmoreland v. Sadoux*, 299 F.3d 462, 466–67 (5th Cir. 2002) (suggesting that the claim against the agent must "invoke[] other provisions of the arbitral agreement," and holding that agents must use the equitable estoppel framework any other nonsignatory would use). Notably, the cases that St. Pierre cites to oppose the agency theory, such as *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), address equitable estoppel, not agency.

[27] *Lagrone v. Advanced Call Ctr. Techs., LLC*, No. C13-2136JLR, 2014 WL 4966738, at *3 (W.D. Wash. Oct. 2, 2014) ("Accordingly, based on the available state guidance, the court predicts that, when faced with the question, the Utah Supreme Court would permit a nonsignatory agent to enforce an arbitration provision in its principal's contract.").

[28] *Pritzker*, 7 F.3d at 1122 (internal quotation marks omitted).

be largely "nullified."[29]

I am persuaded that the majority of courts have it right and that Utah courts would agree: agents can use their principal's arbitration rights if the claim against the agent relates to the principal's agreement and would be subject to arbitration had it been brought against the principal in the first place. Practically, companies act through employees and agents, and it makes little sense to allow a plaintiff to avoid what would otherwise be an arbitratable claim if brought against the principal, simply because an agent carried out that same act at the principal's behest. St. Pierre provides no compelling reason to adopt a narrow rule that an agent is only shielded from claims directly arising out of the terms of a contract (when that agent's principal would not be so limited).

**B.     ACCT can compel St. Pierre to arbitrate its FDCPA claim.**

ACCT provides evidence that it was acting as Synchrony's agent and that the allegations against ACCT relate to St. Pierre's agreement—ACCT can thus avail itself of Synchrony's arbitration rights.

*1.     ACCT was Synchrony's agent.*

Synchrony's control over ACCT's collection practices make clear that ACCT was Synchrony's agent when it allegedly violated the FDCPA. Utah law applies familiar agency principles. "The principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control."[30] The Statement of Work evinces both Synchrony's intent to have ACCT act on its behalf and ACCT's assent. And Synchrony maintained careful control over all aspects of ACCT's collection practices, right down to the script ACCT used when dealing with clients. St. Pierre does not meaningfully dispute that ACCT was acting as Synchrony's agent.[31] I thus find that ACCT was Synchrony's agent.

---

[29] *Arnold*, 920 F.2d at 1281.

[30] *Wardley Corp. v. Welsh*, 962 P.2d 86, 89 (Utah Ct. App. 1998).

[31] St. Pierre argues that ACCT was not a party to the Statement of Work, but ACCT provides evidence showing that it was. ECF No. 21-1.

### 2. St. Pierre's FDCPA claim against ACCT is sufficiently related to St. Pierre's agreement so that ACCT can use Synchrony's arbitration rights.

St. Pierre's agreement states that if she defaults, Synchrony is empowered to use "all channels of communication" to contact St. Pierre, and that Synchrony could "request payment of the full amount due" and use "any other action" to collect amounts unpaid under the agreement. Synchrony hired ACCT to act as its agent to enforce these rights and collect on St. Pierre's unpaid account. Although St. Pierre's claims under the FDCPA do not directly depend on the terms of the parties' agreement, they relate to ACCT's attempts to enforce Synchrony's rights under the agreement, and that is enough.[32]

This conclusion is bolstered by the fact that ACCT is attempting to compel a signatory to arbitration. Courts frequently note that arbitration is more likely appropriate when a nonsignatory attempts to compel arbitration against a signatory.[33] This makes sense: when a party has already agreed to arbitrate the substance of a claim, arbitration is less likely to be prejudicial. Here, not only did St. Pierre agree to arbitrate the substance of her FDCPA claim (given that it was related to her account)—the agreement even put her on notice that claims against Synchrony's "agents" (like ACCT) could be arbitrated.[34]

I am also mindful of the FAA's "liberal federal policy favoring arbitration agreements" and

---

[32] Simply because ACCT can use Synchrony's arbitration rights does not end the inquiry, ACCT must show that St. Pierre's FDCPA claim falls within the scope of the arbitration agreement. But St. Pierre does not dispute this point. In her opposition, St. Pierre does not dispute that the substance of her FDCPA claim falls within the parties' agreement. *See generally* ECF No. 19. Thus St. Pierre concedes this point. L.R. 7-2(d). In any event, the agreement requires arbitration of any claim relating to St. Pierre's account generally, which would include claims relating to attempts to collect on that account.

[33] Courts frequently note that the distinction between compelling signatories and nonsignatories matters. *See Nitro Distrib., Inc. v. Alticor, Inc.,* 453 F.3d 995, 999 (8th Cir. 2006) (noting that the distinction is important); *Thompson-CSF*, 64 F.3d at 779 (same); *Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 131 (2d Cir. 2003) ("That first distinction, which Optibase contends is irrelevant, is decisive; it matters whether the party resisting arbitration is a signatory or not."); *LEI Packaging, LLC v. Emery Silfurtun Inc.,* No. CV 15-2446 ADM/BRT, 2015 WL 9412524, at *4 (D. Minn. Dec. 22, 2015).

[34] ECF No. 13-1 at 6.

that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."[35]  Given that ACCT is being sued for acts it took while Synchony's agent, and that these acts are closely related to St. Pierre's agreement, ACCT may compel St. Pierre to arbitration.

## Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Advanced Call Center Technologies, LLC's **motion to dismiss and compel arbitration [ECF No. 13] is GRANTED.**

IT IS FURTHER ORDERED that this is case is dismissed without prejudice to the arbitration of St. Pierre's claim, **ALL OTHER PENDING MOTIONS [ECF Nos. 35, 37, 39] are DENIED** without prejudice as moot, and the Clerk of Court is directed to CLOSE THIS CASE.

Dated this 22nd day of November, 2016

_____
Jennifer A. Dorsey
United States District Judge

---

[35] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).